## ERHARDT v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.   October 5, 1920.)

No. 2672.

1. **Criminal law ☞1169(1)  1172(1)—Sharp conflict as to uttering words charged requires particular freedom from error.**

   Where there was a sharp conflict in the evidence as to the utterance by defendant of words charged to be violation of Espionage Act, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), it is particularly essential that there be freedom from error in the admission and rejection of evidence, and in charging the jury, in order to sustain the conviction.

2. **Criminal law ☞361(1)—Exclusion of explanation of damaging evidence and attitude toward war held error.**

   In a prosecution for violation of Espionage Act, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), where evidence was admitted that a newspaper containing a picture of the Kaiser was kept in defendant's house, and the court charged the jury could consider it as tending to give character to the man and to the statements alleged to have been made by him, it was error to exclude evidence that the paper was given to defendant's wife to read with a request that she keep it for the donor and that defendant had supported the war by money contributions.

3. **Criminal law ☞761(18)—Charge held erroneous as assuming proof of government's case.**

   In a prosecution for violation of Espionage Act, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), where there was a sharp conflict in the evidence as to the statements uttered by accused, a charge referring to the purpose of the Espionage Act, and stating that the purpose of prosecuting accused was to punish him for having violated the act, was erroneous, as assuming that the government's case was proved.

4. **Criminal law ☞823(2)—General statement held not to cure assumption of guilt.**

   Where, at the conclusion of the court's charge, accused excepted to the portions of it assuming his guilt, a statement that the facts were for the jury, and that the court assumed nothing to be true from the evidence, was insufficient to neutralize the necessarily prejudicial effect of the main charge, which assumed defendant's guilt.

In Error to the District Court of the United States for the Eastern District of Illinois.

William Erhardt was convicted of violating the Espionage Act, and he brings error. Reversed and remanded.

T. M. Webb, of East St. Louis, Ill., for plaintiff in error.

James G. Burnside, of Vandalia, Ill., for the United States.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ALSCHULER, Circuit Judge. Erhardt was indicted for violation of section 3 of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c),[1] was convicted and sentenced to 3 years' imprisonment and $500 fine. He was born in Germany, came here about 40 years ago at the age of 19, and was naturalized in 1886. For more than 25 years last past he lived in East St. Louis, married, raised his family, and apparently had acquired considerable property. Next to his own home he had a four-apartment building, one apartment of which he rented to one Barner. On the evening of January 1, 1918, Barner and wife and their niece, and one Aydt, a roomer of theirs, went over to Erhardt's to spend the evening. Other neighbors were present, 11 in all. All were in Erhardt's two front rooms, which were connected by double doors. It was on this occasion that the offense was alleged to have been committed.

For the prosecution, Barner and Aydt testified that during the evening, in course of conversation with them, Erhardt uttered the words for which he was indicted, substantially as follows:

"We will never win the war. The Kaiser is a better man than President Wilson ever was, and after the war the American people will do as the Kaiser wants them to."

Aydt also testified to a conversation with defendant in October or November, 1917, in which Erhardt made similar remarks; and Barner testified that in January or February, 1918, he saw a newspaper containing a picture of the Kaiser, folded so that the picture showed, sticking under a clock in defendant's kitchen; that he protested to the defendant against the picture being there, telling him that some one would take it down; and that defendant answered that it was his property and he would like to see any one take it down.

Police officers, who arrested defendant late in March, 1918, testified that the picture was there when they made the arrest. The paper containing the picture was admitted in evidence, and witness Ziegler testified that the paper—a copy of the Christian Science Monitor—was given by him to Mrs. Erhardt. Erhardt flatly denied making the remarks for which he was indicted, and 5 others who were of the party on the night of January 1, 1918, testified that they did not hear any such words spoken, and that there was no "war talk" during the evening, which was devoted largely to music.

Several witnesses for the defense testified that Barner and Aydt were friendly toward Erhardt until some time in February or March, 1918, when differences and hard feelings arose between them over the decoration of Barner's dining room.

[1] "Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

[1, 2] While the entire record appears but meagerly to establish the offense of "willfully obstructing the recruiting or enlistment service of the United States to the injury of the service or of the United States," the sharply contradictory evidence made it particularly essential that in the admission and rejection of evidence, and in charging the jury, there be freedom from error. We are of the opinion that error was committed in the court below in excluding evidence concerning the newspaper containing the picture of the Kaiser. As to the newspaper the court charged that—

"The jury can only consider this exhibit as tending to give character to the man and as characterizing the statements alleged to have been made by him."

"Character," as here employed, obviously refers to Erhardt's character as a German sympathizer or well-wisher, as bearing in turn on his purpose or intent to bring about that which is forbidden by the Espionage Act (40 Stat. 217). But the newspaper and the circumstances of its finding, and conversations concerning it, having been shown by the government, defendant should have been given opportunity to show fully how it came into his possession, or into his home, and the reason for keeping it there, and to testify directly as to whether he was a German sympathizer or well-wisher. But this right was denied him. For instance, witness Ziegler, after testifying that he got the paper from the Swann Hotel in East St. Louis and gave it to Mrs. Erhardt, was asked:

"What was said about the paper when you delivered it to Mrs. Erhardt; that is, in the presence of Mr. Erhardt?

"Attorney for the Government: Object to it.

"The Judge: Objection sustained.

"Attorney for defendant: I offer to show your honor that he delivered it to Mrs. Erhardt, and requested that Mrs. Erhardt read it and keep it for him, and he would call for it.

Attorney for the Government: The government objects.

"The Judge: That would not be proper."

On direct examination defendant was asked:

"I will ask you if at any time you permitted or allowed that picture to remain in your house for the purpose of any interest or sentiment in favor of the German government or against the American government? (Objection was made and sustained.)

"Was that picture kept there in the house through any feeling of antagonism to the American government or any favor to the German government? (Objection and same ruling.)

Defendant was also asked:

"Did you have at any time, or since the war, or have you now, any feeling of kindness toward the German government or the Kaiser? (Objection sustained; exception.)

"I ask you if you have contributed your money to the care of the American army. (Objection sustained; exception.)"

Assuming the pictures and the conversations testified to were admissible for the purpose in the charge stated, it was error to exclude the offered evidence explanatory of his possession of the picture or its presence in his house, and of his attitude toward the subject, bearing

directly on the "character" of the defendant in respect to the matters then under inquiry.

.[3] In referring to the Espionage Act, the charge states:

"It is passed for the purpose of stamping out disloyalty in this country; * * * and the purpose of prosecuting this man, who is charged with the violation of this law, is to punish him for having violated it, and to prevent others from engaging in similar utterances."

[4] Without expressing opinion as to the correctness of this definition of the purpose of the act, it is apparent that the words italicized constitute error, because they assume that the government's case was proved. At the conclusion of the charge defendant excepted to such "portions of the charge which assume that the statements alleged in the indictment to have been made by the defendant were in fact made by him." Whereupon the court added:

"No; the court has told the jury that they were the judges of the facts in the case, and the credibility to be given each witness, and that the court itself is not concerned with the facts, and that the court assumes nothing to be true from the evidence, but these matters are entirely for the consideration of the jury."

It is not believed that this further statement was sufficient, under the peculiar circumstances of this case, to neutralize the necessarily prejudicial effect of the other part of the charge.

The judgment is reversed, and the cause remanded.